STATE OF CONNECTICUT *v.* SALVATORE PANELLA

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued March 7—decision released June 3, 1975

*W. Paul Flynn,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Edward J. Mullarkey,* assistant state's attorney, for the appellee (state).

House, C. J. On a trial to a jury, the defendant was found guilty of one count of forgery and one count of obtaining money by false pretenses in violation of §§ 53-346 and 53-360 of the General Statutes respectively. On his appeal to this court, the defendant has first assigned error to the denial of his motion to set aside the verdict as unsupported by the evidence. Such a claim is tested by the evidence printed in the appendices to the briefs. *State v. Lally,* 167 Conn. 601, 603, 356 A.2d 897; *State v. Saia,* 167 Conn. 286, 287, 355 A.2d 88.

From that evidence the jury could reasonably have found the following facts: On August 27, 1968, at about 11:30 a.m., two men, one of whom was the defendant, went to Mike's Auto Sales at 578 Bridgeport Avenue in Milford and inquired of Michele Macaluso, the operator, about buying a used car. While the three men conferred in the car lot from which Macaluso could not see into the office, one of the men asked if he could use the telephone to call his girl friend to see if she would be interested in the car under consideration. Macaluso consented and the man went into the office to use the telephone. The man who remained talking to Macaluso outside on the lot while the other man entered the office was the defendant, Salvatore Panella. About twenty minutes later, after the defendant and his companion had left the premises, Macaluso discovered something was missing in the office. He noticed that the clip-ons on the checkbook were opened and all the checks were out. His wife came in five or ten

minutes later and said there were nine pages of checks missing from the back of the checkbook which had been kept in the top of an unlocked desk drawer in the office. Between 12:30 p.m. and 1 p.m., Macaluso and his wife called the bank to report the checks stolen. Macaluso identified state's exhibit A as a check from his checkbook. Neither the handwriting nor the signature on state's exhibit A is that of Macaluso. He spells his name "Michele," and the name on the exhibit is spelled "Michael."

On that same date, August 27, 1968, Mrs. Gayla Sullivan was employed as a teller in the Milford branch of the First New Haven National Bank. Between noon and 1 p.m. on that day, she cashed the check identified as exhibit A drawn on Mike's Auto Body in the amount of $1400. The defendant was the man who cashed the check. Without objection in either instance, during the trial Macaluso identified the defendant as the man who remained with him in the car lot while his companion went to the office to telephone and Mrs. Sullivan, the teller, identified him as the man for whom she cashed the $1400 check drawn on Mike's Auto Body.

The defendant in his defense offered evidence of an alibi and a claim of mistaken identity. The decisive issues, therefore, resolved themselves into questions of credibility. Such questions are to be determined by the jury as the trier of fact, and the evidence must be given a construction which is most favorable to the sustaining of the jury's verdict. *State* v. *Malley,* 167 Conn. 379, 381, 355 A.2d 292; *State* v. *Benton,* 161 Conn. 404, 409, 288 A.2d 411; *State* v. *White,* 155 Conn. 122, 123, 230 A.2d 18. There was ample evidence to support the jury's verdict and we find no error in the ruling of the

trial court denying the defendant's motion to set aside the verdict on the ground that it was not supported by the evidence.

The defendant's remaining assignments of error are all concerned with evidence submitted as to the pretrial photographic identification of the defendant by the bank teller, Mrs. Sullivan. At the trial, Mrs. Sullivan, called by the state, identified in the courtroom in the presence of the jury the defendant as the person who cashed the stolen and forged check. The defendant made no objection whatsoever to this in-court identification which was made prior to any reference during the trial to photographs. Mrs. Sullivan thereafter testified, also without objection, that she had also been asked to view certain photographs. She stated that she was not sure that she could then recognize the photographs which had been displayed to her. At this point, the jury was excused and Mrs. Sullivan was asked to remain outside the courtroom in order that her testimony would not be influenced by the colloquies of counsel. The defendant then indicated that he wished to raise the issue of the suggestibility of the police procedure in showing the photographs to the witness for pretrial identification in order to discover if it was so impermissibly suggestive as to taint the in-court identification which had already been made without objection. The defendant stated that he wished to raise this issue and have a ruling on it outside the presence of the jury. The court, however, ruled that everything would be done in the presence of the jury, to which ruling the defendant objected. The state then proceeded with its examination of Mrs. Sullivan. The purport of Mrs. Sullivan's testimony regarding the photographic pretrial identification was that on August 30, 1968, two Milford

police officers asked her to look at some photographs to see if she could make an identification. Mrs. Sullivan identified, for the police authorities, the photograph which is state's exhibit B1, as portraying the person who cashed the check. On a second occasion, September 4, 1968, Mrs. Sullivan was again shown photographs by the police and she picked out state's exhibit C1 as a photograph of the person who cashed the check. State's exhibit B1 is a photograph of the defendant taken August 23, 1965. State's exhibit C1 is a photograph of the defendant taken July 29, 1962. On both occasions, Officer Patrick F. McDonald of the Milford police department displayed the photographs to Mrs. Sullivan. Officer McDonald's purpose in having Mrs. Sullivan view photographs on a second occasion was to present her with different age groups to see if she could still make a positive identification. The witness again, and for the last time, saw these photographs, along with certain others that had been shown to her, at the probable cause hearing held on the defendant's case in the Circuit Court in June of 1969, almost a year and a half before the defendant's trial. Officer McDonald testified that when the photographs were shown to Mrs. Sullivan, nothing was said to her except that the police would like her to look through some photographs and see if she could identify any of them as the person who cashed the check. On each occasion, the photographs were not arranged in any special order, there was no particular mark on any of them, and no one photograph was more conspicuous than any other. The trial court found from the evidence that the method used in showing the photographs to Mrs. Sullivan was not in any way suggestive or designed to emphasize certain of the photographs and that no due process

rights of the defendant were violated. The defendant, in addition to assigning error to the admission of the foregoing evidence in the presence of the jury, claims error in the denial of his belated motion to exclude the in-court identification which he argues was also tainted by what he asserts were "in the totality of the circumstances" necessarily suggestive pretrial identification procedures.

The standard by which such a claim is measured was succinctly stated in *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247, where the court said: "[E]ach case must be considered on its own facts, and . . . convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Whether the photographic identification procedure meets this level of suggestiveness is determined "in light of the totality of surrounding circumstances." *Simmons* v. *United States,* supra, 383; see also *State* v. *Hafner,* 168 Conn. 230, 234, 362 A.2d 925, and cases cited therein. The United States Supreme Court has indicated in a number of cases the factors to be considered in evaluating the likelihood of misidentification. They were summarized in *Neil* v. *Biggers,* 409 U.S. 188, 199, 93 S. Ct. 375, 34 L. Ed. 2d 401, to include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the . . . [identification] and the length of time between the crime and the . . . [identification]."

The defendant's argument in support of his contention that the pretrial identification procedure was impermissibly suggestive is based upon the circumstance that Mrs. Sullivan, on three separate occasions, was asked to view different sets of photographs, each containing a picture of the defendant. The repetitiveness of the displays, he contends, was so unduly suggestive in and of itself as to lead to irreparable misidentification.

We find no error in the ruling of the court and its conclusion, reached after hearing extensive evidence and argument, that the defendant's rights to due process of law were not violated. While it is true that the witness did view photographs offered for her identification on three occasions prior to the trial, on at least two of the occasions the group of photographs contained a different photograph of the defendant and each time she positively identified the defendant as the person who cashed the check. In addition, the last of the photographic displays by the police took place well over a year before the defendant's trial, thus reinforcing the independent significance of the in-court identification made without objection. The evidence discloses that Mrs. Sullivan was made aware of the alert on the missing checks from Mike's Auto Body about three o'clock in the afternoon on August 27, 1968, the date of the transaction. When she learned of the alert, she knew right away that she had cashed the $1400 check and immediately went and told her supervisor. Being alerted less than three hours after the check was cashed, Mrs. Sullivan remembered with certainty the person who had cashed the check. Further, her actual encounter with the defendant while cashing the check lasted several minutes during which time a conversation transpired which she

remembered vividly. Her physical description of the defendant given to the police shortly after the transaction was consistent with his actual physical characteristics. All of these facts would lend credence to the conclusion that Mrs. Sullivan's in-court identification was based on her recollection of her encounter with the defendant and was independent of the photographic identification.

We also note that there is no evidence in the record or appendices to the briefs that the pictures were arranged in any suggestive sequence or contained any particular identifying marks. Nor is there any evidence that any particular photograph stood out in any way or that the police did anything to influence Mrs. Sullivan's selection of the defendant's photograph. In sum, there was no evidence that would have supported a finding that the pretrial photographic identification procedure was in the least suggestive. We find no merit to the contention of the defendant that in the totality of the circumstances there was an impermissibly suggestive identification procedure followed in this case. Accordingly, we find no error in the ruling of the court denying the motion of the defendant to exclude the evidence concerning the identification of the defendant by Mrs. Sullivan.

The defendant's remaining claim of error requires but brief mention. It is that the court committed error in holding in the presence of the jury a hearing on the admissibility of the pretrial photographic identifications of the defendant by Mrs. Sullivan. Of primary significance in our consideration of this claim is the fact that before the offer of any evidence of pretrial photographic identification the witness, without objection and in the presence of the

jury, made an in-court identification of the defendant as the man who had cashed the check in question. It appears of record that at the time of the unobjected-to, in-court identification defense counsel was fully aware of the pretrial photographic identifications as a result of his representation of the defendant at the bind-over proceedings, but he nevertheless refrained from making any objection. The subsequent evidence of the pretrial photographic identifications, accordingly, was not introduced as is usually the case in an effort by the defendant to exclude the in-court identification but rather by the state to bolster it. This is a permissible procedure. *State* v. *Frost,* 105 Conn. 326, 341, 135 A. 446.

Obviously the more prudent and better procedure is for the court to determine in the absence of the jury questions as to the admissibility of evidence if for no other reason than that such a procedure obviates any risk that the jury may hear evidence which the court ultimately determines to be inadmissible. See *Pinto* v. *Pierce,* 389 U.S. 31, 32, 88 S. Ct. 192, 19 L. Ed. 2d 31. It clearly appears that in the circumstances of this case the ruling of the court in the light of its ultimate proper decision to admit the testimony as evidence for the jury's consideration was not error, and, even if it could be considered as an erroneous ruling, it was harmless.

There is no error.

In this opinion the other judges concurred.